IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GENNICE ANDERSON**<br>7201 Wessex Drive<br>Temple Hills, MD 20748<br><br>        Plaintiff,<br><br>v.<br><br>**JAMES H. BILLINGTON, Librarian**<br>Library of Congress<br>101 Independence Avenue, S.E.<br>Washington, D.C. 20540<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No.: _____<br><br>   **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff, Gennice Anderson, by and through undersigned counsel and states as follows:

## NATURE OF ACTION

1. Plaintiff Gennice Anderson ("Officer Anderson" or "plaintiff") brings this action against defendant James H. Billington, Librarian of the Library of Congress ("Billington" or "defendant"), under Title VII of the Civil Rights Acts of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). Plaintiff seeks redress for unlawful discriminatory employment practices committed by defendant based on plaintiff's gender, including quid pro quo and hostile work environment sexual harassment, as well as for retaliation against her based on her engagement in protected activity.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

3. This action is authorized and instituted pursuant to 42 U.S.C. § 2000e-16.

4. Plaintiff filed a timely complaint of discrimination on August 23, 2001, with the defendant's Equal Employment Opportunity Office, complaining of the unlawful acts alleged herein.

5. As of the date of filing this complaint, the Equal Opportunity Office ("EEO") at the Library of Congress has yet to rule on Officer Anderson's claim. Over 180 days have passed since the filing of Officer Anderson's EEO complaint without a recommendation from the EEO and thus, pursuant to 42 U.S.C. § 2000e-16(c), jurisdiction is proper.

6. Plaintiff has met all administrative and jurisdictional prerequisites for bringing this action.

7. The unlawful employment practices alleged herein were committed within the jurisdiction of the United States District Court for the District of Columbia. Venue, therefore, properly lies in the District Court for the District of Columbia, pursuant to 28 U.S.C. § 1391(b). Venue in this district is also proper pursuant to 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

8. Plaintiff Gennice Anderson, as an African-American female, is a member of a protected class. Officer Anderson is a resident of the State of Maryland.

9. Defendant Billington is the Librarian of the Library of Congress and, as head of the agency, is the proper defendant under Title VII.

**FACTS**

10. Officer Anderson worked for the Library of Congress as a uniformed officer in the Library of Congress Police Force from July 17, 2000, until she was forced to resign on July 27, 2001.

11. Officer Anderson was sexually harassed by her direct supervisor, Sgt. Robert Gross, throughout her entire tenure at the Library. Sgt. Gross's sexual harassment of Officer Anderson included inappropriate sexual commentary, innuendos, and actions. This harassment created a hostile working environment for Officer Anderson.

12. At all relevant times, Sgt. Gross was an employee of defendant.

13. Sgt. Gross regularly made disparaging and derogatory comments about women when Officer Anderson was present, especially during roll call when he had the attention of all officers. Sgt. Gross, almost daily, made comments similar to: "Women are only good for three things: the kitchen, laying on their backs, and an occasional ass-whupping." Such comments were often directed at Officer Anderson.

14. During her employment at the Library, Sgt. Gross often commented, in a sexually suggestive manner, on Officer Anderson's physical appearance. These comments were unwelcome and made Officer Anderson very uncomfortable.

15. In May 2001, in front of a number of officers, Sgt. Gross approached Officer Anderson, sniffed her in a sexually suggestive manner, and made lascivious comments regarding how she smelled. This incident, as well as other similar incidents, embarrassed and humiliated Officer Anderson.

16. On or around June 13, 2001, under the pretenses of a personal counseling session, Sgt. Gross required Officer Anderson to report to his office. Sgt. Gross closed the door behind

Officer Anderson as she entered his office. Given Sgt. Gross' prior comments and behavior, this situation made Officer Anderson very uncomfortable. After stating that he was concerned about Officer Anderson's use of sick leave, Sgt. Gross proceeded to tell her, "You know I like you, don't you?" Officer Anderson perceived this to be a sexual advance and told him that she was not interested in anything other than a professional business relationship with Sgt. Gross. Sgt. Gross responded by telling her that he "could make things easier for her." After she again rejected his advances, he proceeded to write her up by documenting the meeting as an "oral counseling session" regarding her use of sick leave. Officer Anderson was not offered an opportunity to have union steward present during this counseling session, as was required under her collective bargaining agreement with the Library.

17. Other male officers have taken more sick leave than Officer Anderson without receiving oral counseling or a "write-up."

18. Approximately two weeks after this incident, Officer Anderson got caught in traffic due to a tar spill on the beltway while proceeding to work. She called to alert Sgt. Gross that she might be delayed. Sgt. Gross told Officer Anderson that he would not grant her leave and that she had "better get her butt in here on time."

19. Officer Anderson began to feel nauseous and fatigued. She called the Library a second time to give notice that she had fallen ill, and would not be able to work that day. The same day, Sgt. Gross completed and signed paperwork approving her sick leave for the day. Despite the approval, Sgt. Gross again mandated an oral counseling session with Officer Anderson and wrote her up for taking the leave.

20. Male officers were allowed to come in late that day due to the traffic on the beltway without repercussions or harassment.

21.    In July 2001, Officer Anderson complained to Lt. Michael Murphy about the sexual harassment she was experiencing from Sgt. Gross and the write-ups he had issued her. Lt. Murphy failed to respond to Officer Anderson's complaints. He simply told her, "What do you want me to do?" and took no action to address her concerns.

22.    Male officers who complained to Lt. Murphy regarding their treatment by fellow officers were supported by Lt. Murphy, who took adequate steps to address and remedy their complaints.

23.    Later in July, Officer Anderson again complained about the sexual harassment she continued to endure at the hands of Sgt. Gross, this time to Jean Parker, the Federal Women's Program Manager. Ms. Parker, in turn, contacted Doreen Thomas of the Library of Congress's EEO office and arranged for her to meet with Officer Anderson.

24.    Less than a week after complaining about the sexual harassment to Ms. Parker and Ms. Thomas, Officer Anderson received a letter of separation from the Library of Congress, which cited the use of four days of "unscheduled sick leave" and making "an untruthful statement pertaining to your official duties and matters affecting the Police Force," as the reasons for her dismissal.

25.    Male officers on the police force who had taken as many sick days as Officer Anderson had were not terminated.

26.    Knowing that a termination would have adverse effects on her future employment opportunities, Officer Anderson was forced to resign prior to the effective date of her termination.

27.    Sgt. Gross' sexual harassment towards Officer Anderson was severe and pervasive. The harassment humiliated and embarrassed Officer Anderson, interfered with her

5

work performance, and created an intimidating, hostile and offensive working environment. Lt. Murphy's disregard for her complaint and acceptance of Sgt. Gross' behavior further affected the terms and conditions of Officer Anderson's employment. As a result of defendant's separation and forced resignation of plaintiff, Officer Anderson has suffered damages.

## FIRST CAUSE OF ACTION

### TITLE VII—SEXUAL HARASSMENT, HOSTILE WORK ENVIRONMENT

28. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 27 above as though fully set forth herein.

29. Defendant has intentionally violated Title VII by discriminating against Officer Anderson on the basis of her sex by allowing a hostile working environment to develop, spread, and persist. Defendant permitted Sgt. Gross to sexually harass Officer Anderson throughout her tenure at the Library, and failed to remedy the harassment when Officer Anderson complained. Such harassment materially and detrimentally affected the terms and conditions of Officer Anderson's employment.

30. As a result of this harassment, Officer Anderson suffered damages.

## SECOND CAUSE OF ACTION

### TITLE VII—SEXUAL HARASSMENT, QUID PRO QUO

31. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 30 above as though fully set forth herein.

32. Sgt. Gross's offer to exchange sexual favors for fair or preferential treatment and subsequent discipline of Ms. Anderson after she rejected his proposal constitutes quid pro quo sexual harassment.

33. Defendant has intentionally discriminated against Officer Anderson on the basis of her sex by permitting Sgt. Gross to engage in quid pro quo sexual harassment, which affected the terms and conditions of Officer Anderson's employment, in violation of Title VII.

34. As a result of this harassment, Officer Anderson suffered damages.

### THIRD CAUSE OF ACTION

### TITLE VII—RETALIATORY TERMINATION

35. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 34 above as though fully set forth herein.

36. Officer Anderson engaged in protected activity by filing grievances regarding her "counseling sessions," complaining to Lt. Murphy regarding the sexual harassment and employment discrimination that she experienced, and by complaining to Ms. Parker (of the Federal Women's Program) and Ms. Thomas (of the EEO).

37. Defendant was aware of Officer Anderson's protected activity.

38. Defendant intentionally retaliated against Officer Anderson for engaging in protected activity by separating her from the Library and forcing her resignation.

39. Defendant has violated Title VII by intentionally retaliating against Officer Anderson because she engaged in protected activity.

40. As a result of this retaliation, Officer Anderson has suffered damages.

### FOURTH CAUSE OF ACTION

### TITLE VII—DISCRIMINATORY TERMINATION

41. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 40 above as though fully set forth herein.

42. Defendant intentionally violated Title VII by terminating Officer Anderson based on her sex.

43. As a result of this discrimination, Officer Anderson has suffered damages

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

A. declaring that the acts and practices complained of herein are in violation of Title VII;

B. enjoining and permanently restraining defendant and its agents and employees from violating Title VII;

C. directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment and advancement opportunities;

D. directing defendant to make plaintiff whole for all earnings and other job benefits she would have received but for defendant's discriminatory treatment ("back pay"), including, but not limited to, lost wages, pension, bonuses and other benefits;

E. directing defendant reinstate Ms. Anderson to her position at termination and to pay plaintiff front pay from the date of judgment until plaintiff is restored to her rightful position, or in an amount sufficient to make plaintiff whole without reinstatement;

F. directing defendant to pay plaintiff compensatory damages pursuant to 42 USC § 1981a, including damages for her emotional distress, physical pain, mental anguish, and humiliation in an amount appropriate to the proof at trial and as allowed by 42 USC §1981a(b)(3);

G. awarding plaintiff the costs of this action, including reasonable attorneys' fees, as allowed by 42 USC § 2000e-5(k);

H. awarding plaintiff pre- and post-judgment interest; and

I. granting such other and further relief as this Court deems necessary and proper.

## DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury on all claims.

Dated: January 17, 2003                     Respectfully submitted,

                                            GENNICE ANDERSON


                                    By:    _____
                                            Jeri Somers Bar # 417668
                                            Kathleen Wach Bar # 430049
                                            Matthew Reinhard Bar # 474941
                                            Miller & Chevalier, Chartered
                                            655 15th St., NW Ste. 900
                                            Washington, D.C. 20005-5701
                                            (202) 626-5800


                                            _____
                                            Susan Huhta Bar # 453478
                                            Lisa A. Wilson Bar # 479534
                                            Washington Lawyers' Committee
                                            For Civil Rights and Urban Affairs
                                            11 DuPont Circle, NW Ste. 400
                                            Washington, D.C. 20036